**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STARLET BAKER, CHARLES LOVETT, and FREDRICK JONES, on behalf of themselves and all other persons similarly situated, known and unknown, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 15 CV 3246 |
| ELITE STAFFING, INC., | ) ) ) | Judge Leinenweber |
| Defendant. | ) | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE PARTIES' JOINT STIPULATION OF SETTLEMENT AND FOR APPROVAL OF CLASS CERTIFICATION, FORM AND MANNER OF CLASS NOTICE, AND SCHEDULING OF FAIRNESS HEARING FOR FINAL APPROVAL OF SETTLEMENT**

## I.    INTRODUCTION

Plaintiffs Starlet Baker, Charles Lovett and Frederick Jones ("Plaintiffs," the "Named Plaintiffs" or the "Class Representatives"), on behalf of themselves and all others similarly situated, move this Court for an order: approving Plaintiffs' counsel as Class Counsel; preliminarily approving the Parties' Joint Stipulation and Agreement to Settle Class Action Claims (attached hereto as **Attachment 1**) (hereafter the "Settlement Agreement," "Stipulation" or the "Agreement"); approving class certification for settlement purposes; approving the form and manner of Class Notice; and scheduling a Fairness Hearing for final approval of settlement. In further support of this Unopposed Motion, the Plaintiffs state as follows:

## II.    BACKGROUND

### A.    SUMMARY OF THE COMPLAINT

On April 13, 2015 Plaintiffs filed this Action in the U.S. District Court for the Northern District of Illinois alleging that Defendant Elite Staffing, Inc. ("Defendant" or "Elite"): (a) failed

to pay them federal and Illinois-mandated minimum and/or overtime wages for all time worked in violation of the Fair Labor Standards Act, 29 U.S.C. §201, *et seq*. ("FLSA"), and the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.* ("IMWL") (collectively, the "Alleged Minimum Wage Violations"); (b) failed to provide Plaintiffs with an Employment Notice (and/or failed to provide them with an accurate Employment Notice) in violation of the Illinois Day and Temporary Labor Services Act ("IDTLSA"), 820 ILCS 175/1, *et seq.* (the "Alleged Employment Notice Violation"); and (c) failed to compensate Plaintiffs for a minimum of four hours at their regular rate of pay on days that they were contracted by Defendant to work at a third party client company but were not utilized in violation of the IDTLSA (the "Alleged Four Hour Minimum Pay Violation"). On April 15, 2015, Plaintiffs filed an Amended Complaint making the above-referenced allegations on a class-wide basis. Defendant disputes the claims in this Lawsuit and disputes that Plaintiffs and the Class Members are owed any wages or other damages of any sort.

### B.     SUMMARY OF THE MATERIAL SETTLEMENT TERMS

Early in this Litigation, the Parties agreed to exchange sample documents relating to Plaintiffs' claims from multiple branch offices operated by Defendant in Illinois, including, but not limited to: employment notices; sign in sheets; placement histories; various payroll records; billing and invoice records; various policies; daily reports; minimum pay records; some emails; and other documents. Defendant made a voluminous production of said documents on a sampling basis in the course of formal discovery.

On January 19, 2016, this Court granted Plaintiffs' and Defendant's (hereinafter, the "Parties") Joint Motion to Stay all Discovery to Allow the Parties to Conduct Mediation. *See* Docket Entry No. 27 (hereinafter "Dkt. No. ¶ _"). Defendant continued to produce a large volume of documents for Plaintiffs' review informally to further the Parties' goal of exploring

resolution of this matter without unnecessary litigation.

On May 9, 2016, the Parties participated in an all-day mediation with the Hon. Morton Denlow, a retired Magistrate Judge in the Northern District of Illinois. With the assistance of Judge Denlow, the Parties reached a settlement of this matter, resolving the claims of the Named Plaintiffs arising under the FLSA and IMWL, as well as any other potential claims of Named Plaintiffs, on an individual basis and resolving the claims arising under the IDTLSA on a class-wide basis, subject to approval of this Court.

The Parties believe they are and were fully and adequately informed of all facts necessary to evaluate the case for settlement and reach a settlement at the mediation session. Defendant continues to deny any wrongdoing in the matter, but it has evaluated the risk inherent of proceeding to trial, as well as the costs of litigation, and Defendant determined the settlement reached was an appropriate compromise. The Named Plaintiffs and their Counsel likewise believe the settlement reached in this matter is a good outcome for Plaintiffs and the putative class. The material terms of the settlement are as follows, subject to approval by the Court, and are more fully described in Attachment 1. The Parties agree and represent that the settlement terms discussed in this Unopposed Motion are meant to be a summary of the settlement terms, which are fully contained in the Agreement:

1.    **Class Definition**: The Class of approximately 96,800 Class Members, who were allegedly subjected to Defendant's alleged practices of not paying four hour minimum pay when due and/or not providing laborers with employment notices in violation of the IDTLSA, is to be defined for settlement purposes as:

> All day or temporary laborers who have been employed by Elite Staffing, Inc. and assigned to or placed at a client company in Illinois from April 13, 2012 through April 13, 2015.

2.     **Settlement Amount**: Defendant has agreed to fund a Total Settlement Amount of a maximum of Nine Hundred and Fifty Thousand Dollars and Zero Cents ($950,000.00) (the "Total Settlement Amount").  The Total Settlement Amount of $950,000.00 will be apportioned as follows:

> a.  Service Payments to each of the three Named Plaintiffs in the amount of Two Thousand Dollars and Zero Cents ($2,000.00) – which will total Six Thousand Dollars and No Cents ($6,000.00) collectively and no more – as an enhancement award for their service to the Class, as approved by the Court;
>
> b.  General Release Payments to each of the three Named Plaintiffs in the amount of Six Thousand Dollars and Zero Cents ($6,000.00) – which will total Eighteen Thousand Dollars and No Cents ($18,000.00) collectively and no more – in consideration for Named Plaintiffs executing a general release of all claims against Defendant, including, but not limited to, their FLSA and IMWL claims, as approved by the Court;
>
> c.  Payment of Class Counsel's fees and costs in the amount of up to 25% of the Total Settlement Amount – which will total no more than Two Hundred Thirty-Seven Thousand Five Hundred Dollars and Zero Cents ($237,500.00) – as approved by the Court;
>
> d.  Payment of any costs associated with the claims administration process in this settlement above the amount of the Claims Administration Fund ("Additional Claims Administration Costs"); and
>
> e.  Payment of all timely and valid claims submitted by Claimants under the terms of the Agreement.

In addition to the Total Settlement Amount, Defendant has agreed to put One Hundred Thousand Dollars and Zero Cents ($100,000.00), and no more, into an additional fund used solely to pay for the costs associated with the claims administration process in this settlement (the "Claims Administration Fund").  The purpose of the Claims Administration Fund is to pay for the costs associated with administering the claims only, including, for example: (1) the costs of printing and mailing the Abridged Notice of Settlement and Claim Form, including any necessary translations, to each Class Member; (2) the costs of postage for the Class Members returning executed Claim Forms; (3) the costs of printing and mailing the Unbridged Notice of

Settlement and Claim Form, including any necessary translations upon the request of any Class Member; (4) the costs of reasonable efforts to locate Class Members; and (5) the costs, if any, associated with processing Claim Forms. Payments from the Claims Administration Fund shall be paid only to the U.S. Postal Service and third party vendors necessary for Class Counsel to carry out its obligations in the administration of the claims process described in the Agreement.

The Parties will self-administer the claims administration process in this Settlement. This compromise was reached during an all-day, arm's-length mediation between the Parties as a way to ensure that each Claimant can receive a larger Settlement Payment Award from this Settlement, rather than spending that money on administration. Indeed, prior to agreeing to self-administration, Plaintiffs' Counsel received estimates from third-party vendors that estimated third-party claims administration costs in excess of $300,000.00 because of the Class size, an amount that would substantially reduce Class Members' settlement awards. As such, the Parties, with the assistance of the mediator, the Honorable Morton Denlow, agreed upon the self-administration method outlined in Section V(6) of the Settlement Agreement.

Class Counsel has obtained multiple quotes from third party vendors for the printing and postage costs relating to the initial mailing of Notice Packets to each of the 98,600 Class Members containing an abridged Notice of Settlement, Claim Form, and a return envelope. The postage costs for any Claim Forms that are actually returned by Class Members will be charged to a Mailing Permit Account that Class Counsel will establish pursuant to paragraph V(6) of the Parties' Agreement, and which will be funded via the Claims Administration Fund. Class Counsel has also obtained similar quotes from third party vendors for the printing and postage costs involved in re-mailing up to 20,000 Notice Packets to updated addresses, and unabridged Notices of Settlement to 10,000 Class Members. Even assuming a Claim Form return rate of 35%, an undeliverable return rate of 20% of Class Members for whom an updated address is

obtained, and a request for unabridged Claim Forms of 10% of Class Members, all of which are very conservative assumptions, the printing and postage costs of Claims Administration would still be expected to stay below $100,000.00. While pursuant to the Parties' Stipulation, any costs of Claims Administration in excess of $100,000 will be paid from the Total Settlement Amount, the Parties anticipate that this deduction from the Total Settlement Amount, if any, would be reasonable.

While Class Counsel will administer the notice and claims process in this matter and will process returning Claim Forms from Class Members, Defendant's Counsel (and not Class Counsel) shall administer the Settlement Award Payments. Defendant shall bear the related costs of those efforts with no reimbursement from the Total Settlement Amount or Claims Administration Fund. Additionally, Defendant will provide specific information to Class Counsel regarding the printing, mailing, cashing and, where necessary, re-mailing of checks to updated addresses, as explained in the agreement.

3.     **Individual Settlement Payments to the Class**: Each Class Member who submits a timely and valid Claim Form (a "Claimant") shall receive an equal share of the Net Settlement Fund up to a maximum amount of One Hundred Eighty Dollars and Zero Cents ($180.00) per Claimant, and each equal share paid to a Claimant shall be referred to as a "Settlement Award Payment." The "Net Settlement Fund" is defined as the Total Settlement Amount minus: (a) the General Release Payments to Named Plaintiffs, (b) the Service Payments to Named Plaintiffs; (c) the attorneys' fees and costs awarded to Class Counsel; and (d) the Additional Claims Administration Costs. The Settlement Award Payment that each Claimant ultimately receives will depend on how many valid and timely claims are filed by Class Members. As an example, if 20% of Class Members submit a Claim Form, Class Members would receive approximately Thirty Three and 0/100 ($35.43), or approximately an instance of four hour minimum pay.

In addition to this payment, all Class Members will also benefit from the strong injunctive relief described below as "non-monetary relief."

4.      **Non-Monetary Relief:** In addition to the above referenced payments, Defendant has agreed to implement the following policies and practices, as described more fully in Section V(8) of the Settlement, to help ensure future compliance with the IDTLSA:

For a period of two years, beginning twenty-one (21) days following the Effective Date, Defendant shall provide all employees contracted to work at a third party client company located in Illinois with a document to be distributed with Elite's then-existing application packet and displayed at each branch office and on-site office in Illinois, which shall include the following information in a font size not less than 9 points:

- **Right to receive a minimum of 4 hours pay for each day assigned**: If you are contracted to work on a particular day by Elite and show up at the assignment but are not utilized, you are entitled to a minimum of 4 hours pay for that day's assignment. If, however, Elite reassigns you in that same shift, you are entitled to receive a minimum of 2 hours pay for that assignment. If you appear at a third-party client site without having been contracted to work at that client for that day, you are not entitled to 2 or 4 hour minimum pay.

- **Right to review payroll records**: If you believe you were not paid for all time you worked, you have the right to review your pay records upon a written request. If you believe that those records are not accurate, you also may review, upon written request, Elite's records reflecting the number of hours billed to Elite's client for your work for the time period that you contend Elite's pay records are not accurate. A written request form is required to be available in any dispatch office, and you will be permitted to inspect the records during business within five days after making the request.

- **Right to be paid for all time worked**: You must be paid for all time you work. However, it is your responsibility to be ready to work at the start of your shift and failure to do so may result in disciplinary action, up to and including DNR or termination.

- **Complaints and questions:** If you believe you were not paid correctly, including but not limited to, not receiving 2 or 4 hour minimum pay, you should either: (a) put your complaint in writing and give it to your branch manager and/or on-site manager; (b) call Elite's

payroll hotline at 1-800-423-5595 and press 2; or (c) if you do not get a satisfactory response from the branch manager, on-site manager, or payroll hotline, call Elite's Human Resources Department at 1-800-423-5595 and press 7.

5.    **Release and Bar of Class Claims:** All Class Members who do not exclude themselves from this Settlement will release and forever discharge and covenant not to sue on the Released Claims against the Defendant. "Defendant" or "Elite" refers to Elite Labor Services Ltd. d/b/a Elite Staffing, Inc., and its parents, subsidiaries, divisions, successors, heirs and assigns, and affiliated companies doing business as Elite Staffing or Elite Labor Services, except that "Defendant" or "Elite" does not include any other company that employed a Class Member before it was acquired by Elite.  "Released Claims" means any and all claims arising under the IDTLSA that were and could have been brought against Defendant Elite in this Lawsuit, excluding any claims arising under Sections 15, 20, 25, 40, 90, 95(a)(1), 95(a)(3) and 95(a)(4) (except that any claim for attorneys' fees and costs relating to the released claims are also released) of the IDTLSA. Any claims that Class Members may have against Defendant's third party client companies (but not against Elite) arising under the IDTLSA, are explicitly excluded from the definition of "Released Claims", as detailed more fully in Section V(2) of the Settlement Agreement.

6.    **Named Plaintiffs' Payments (Service Payments and General Release Payments):** In addition, as part of the Agreement, each Named Plaintiff will receive a service payment of $2,000 from the Settlement Fund as an award for their service to the Class. Defendant also agreed to contribute and additional $24,000 to the Settlement Amount, or $8,000 for each Plaintiff, as consideration for each Named Plaintiff executing a general release of all claims against Defendant, including but not limited to, their FLSA IMWL and IWPA claims. No

other Class Member is being asked to execute such a general release and this additional consideration for such releases is reasonable.

       **7.**     **Attorneys' Fees**: Pursuant to the Settlement, Class Counsel will file a fee petition to the Court to be compensated for all past and future attorneys' fees that have been or will be expended and that have or will be incurred in seeing this matter through Final Approval, securing the Final Order, and defending the settlement, including the conducting of any appellate action, from the Total Settlement Amount in an amount not to exceed 25% of the Total Settlement Amount, or $237,500.00, to be approved by the Court. Payment of attorneys' fees and costs pursuant to this Section shall be paid from the Total Settlement Amount consistent with applicable legal precedent for awards of attorneys' fees under Rule 23.

## III.    <u>ARGUMENT</u>

       A district court has broad discretion in determining whether the parties have made a showing that class certification is appropriate. *Keele v. Wexler,* 149 F.3d 589, 592 (7th Cir. 1998). In evaluating the fairness, reasonableness, and adequacy of the settlement, the Court should view the facts in a light most favorable to the settlement. *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). The Court should not substitute its own judgment as to the best outcomes for litigants and their counsel. *Armstrong v. Bd. of Sch. Dirs*., 616 F.2d 305, 315 (7th Cir. 1980) (overruled on other grounds). The Court's role is to determine whether Plaintiffs are asserting a claim which, assuming its merits, would satisfy the requirements of Rule 23. *See* H. Newberg on Class Actions, § 24.13 at 60 (3d ed. 1992) (hereinafter "Newberg"); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974).

### A.      **PLAINTIFFS' CLASS CLAIMS SHOULD BE CERTIFIED**

       Rule 23 requires a two-step analysis to determine whether class certification is appropriate. A plaintiff must satisfy the requirements of Fed. R. Civ. P. 23(a) and fall within at

least one of the categories identified in Rule 23(b). *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008) (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982)). First, the action must satisfy all four requirements of Rule 23(a), meaning "the plaintiff must meet the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *Id*.

Second, the action must satisfy one of the conditions of Rule 23(b). *Id*. Rule 23(b) is satisfied on a showing of one of three circumstances: (1) separate lawsuits would create the risk of inconsistent judgments or would be dispositive of the interests of non-party Class Members; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or (3) questions of law or fact common to the class predominate over questions affecting individual members, and the class action is superior to other available methods. FED. R. CIV. P. 23(b)(1) – (3).

Plaintiffs' claims meet the requirements for class treatment of this Lawsuit.[1]

## 1. Certification Under Rule 23(a)

### a. Numerosity -- Rule 23(a)(1)

The class is so numerous that joinder of all members is impracticable. When analyzing whether joinder is impracticable, factors such as judicial economy, geographic diversity of Class Members, and the ability of Class Members to institute individual lawsuits should also be considered. *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 663

---

[1] Defendant believes that class certification is warranted for settlement purposes only, and reserves all defenses to class certification in the event that the settlement class is not certified. Defendant's position is that it has strong evidence that many laborers were provided with employment notices and received four hour minimum pay. Hence, Defendant believes that in the absence of a settlement, the putative classes alleged in the Amended Complaint would not be certified. Accordingly, to the extent that Plaintiffs' arguments are not specifically limited to "for settlement purposes only," Defendant does not join in them and specifically reserves its rights to argue that class certification is not appropriate should the Settlement not be preliminarily and/or finally approved, or should it become void for any other reason, including, but not limited to, the settlement being overturned on appeal.

(N.D. Ill. 1996). To determine whether joinder is impracticable courts must consider the circumstances unique to each case. *Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 (7th Cir. 1966). "To require a multiplicity of suits by similarly situated small claimants would run counter to one of the prime purposes of a class action." *Id.* at 1333. In this case, the Parties have established that the putative settlement class is composed of approximately 96,800 individuals, who are spread throughout Illinois. The size of this putative class easily satisfies Rule 23(a)(1).

### b.      Commonality -- Rule 23(a)(2)

For a class to be certified, questions of law or fact must exist common to the class. FED. R. CIV. P. 23(a)(2). "[C]ommonality requires the plaintiffs to demonstrate that the class members have suffered the same injury." *Jamie S. v. Milwaukee Pub. Schs*, 668 F.3d 481, 497 (7th Cir. 2012). (internal quotation marks omitted); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). In order to satisfy this requirement, there needs to be just one common question of law or fact but that common question cannot be just a superficial similarity. *Dukes*, 131 S. Ct. at 2556; *Jamie S.*, 668 F.3d at 497. Not only must the class claims "depend on a common contention," that common contention "must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551; *Jamie* S., 668 F.3d at 497.

Here, Plaintiffs' claims are based on questions of fact and law common to the class. Each Class Member was employed by Defendant during the Class Period and allegedly subject to Defendant's policies and practices during the Class Period, including: (a) claims for Defendant's alleged failure to pay four hour minimum pay when required by the IDTLSA; and (b) claims for Defendant's alleged failure to provide its employees with Employment Notices (and/or alleged

failure to provide its employees with accurate Employment Notices) pursuant to the IDTLSA. The resolution of these questions will resolve the matter for the entire class.

### c.    Typicality -- Rule 23(a)(3)

The question of typicality is closely related to the preceding question of commonality. The Seventh Circuit has held that a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992). To meet the typicality requirement, there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group. *Spano v. Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). The claims here of Plaintiffs and Class Members arise from the same alleged conduct of Defendant described above.

### d.    Adequacy of Representation -- Rule 23(a)(4)

Rule 23(a)(4) requires the named class representative "will fairly and adequately protect the interests of the class." "The adequacy of representation requirement has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the named representative must have a "sufficient interest in the outcome to ensure vigorous advocacy"; and, (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously." *Lau v. Arrow Fin. Servs., LLC*, 2007 U.S. Dist. LEXIS 40066, 17 (N.D. Ill. 2007) (citing *Sledge v. Sands,* 182 F.R.D. 255, 259 (N.D. Ill. 1998); *Gammon v. GC Servs. Ltd. P'ship.,* 162 F.R.D. 313, 317 (N.D. Ill. 1995)). The burden of demonstrating that the class representative is adequate is not heavy. *Sledge,* 182 F.R.D. at 259.

Plaintiffs satisfy this standard here. Plaintiffs do not have antagonistic or conflicting claims with other members of the class. Plaintiffs, like members of the Class, were all employed by Defendant as temporary laborers and were all assigned to one of Defendant's third party client companies within the State of Illinois. Plaintiffs also allege that they and the Class Members did not receive: (a) an Employment Notice (and/or an accurate Employment Notice) when they were contracted to work pursuant to the IDTLSA; and/or (b) a minimum of four hours of pay when they were contracted to work by Elite at a third party client on a particular day but were not utilized. Plaintiffs also have a sufficient interest in the outcome to ensure vigorous advocacy. Adequacy requires the Named Plaintiffs to be conscientious and to "understand the basic facts underlying his claims." *Id.* Plaintiffs here understand the general foundation of the case. Each Named Plaintiff participated in the Parties' formal and informal discovery process, assisted Class Counsel in reviewing and analyzing documents produced by Defendant, and assisted in an all-day formal mediation to explore resolution of this matter. This process qualifies Named Plaintiffs as "conscientious representative plaintiffs" and satisfies this element. *Robles v. Corporate Receivables, Inc*., 220 F.R.D. 306, 314 (N.D. Ill. 2004).

As explained, *infra*, Section II(C), the Named Plaintiffs' attorneys are qualified and able to conduct the proposed litigation vigorously.

### 2.     This Action Satisfies Requirements Of Rule 23(b)

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy the requirements of one of the subdivisions of Rule 23(b). Rule 23(b)(3) provides that a class can be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Plaintiffs seek certification

under Rule 23(b)(3). *See Allen v. International Truck and Engine Corp*., 358 F.3d 469, 472 (7th Cir. 2004).

Rule 23(b)(3) allows an action to be maintained as a class action if the court finds that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual class members" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). In determining "superiority", the court should look to non-exhaustive factors: the interest of Class Members in individually controlling separate actions; any litigation concerning the controversy already commenced; the desirability or undesirability of concentrating the litigation; and the manageability of the class action. *Id*. The Seventh Circuit has concluded that classes seeking substantial damages may be certified under Rule 23(b)(3). *Jefferson v. Ingersoll International Inc*., 195 F.3d 894, 898 (7th Cir. 1999). The courts have certified similar class claims seeking statutory penalties under Rule 23(b)(3). *See De Leon-Granados v. Eller and Sons Trees, Inc.*, 497 F.3d 1214 (11th Cir. 2007) (claim under the Migrant and Seasonal Agricultural Worker Protection Act (the "AWPA")).

The common questions of law and fact in this case predominate over any individual issues. The dominant legal issue is whether Defendant's record keeping and policies or practices violated the IDTLSA, 820 ILCS 175/1, *et seq*., in so far as Defendant allegedly failed to pay four hour minimum pay and/or allegedly failed to give Employment Notices (and/or failed to give accurate Employment Notices) to Plaintiffs and Class Members when required by the IDTLSA. Further, the predominance requirement is also satisfied where a "common nucleus of operative fact," for which the law provides a remedy, exists among all class members. *Chandler v. Southwest Jeep-Eagle, Inc*., 162 F.R.D. 302, 310 (N.D. Ill. 1995). In this case, there is an

alleged common nucleus of operative fact that concerns Defendant's minimum pay and employment notice policies/practices under the IDTLSA.

Further, a class action is superior to other methods of adjudication in this case. Judicial economy and efficiency, as well as consistency of judgments would be achieved through the certification of the class. *See Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 189 (N.D. Ill 1992). The alternative is potentially *thousands* of individual lawsuits and piecemeal litigation.

**B.      THE PROPOSED CLASS NOTICE IS FAIR AND SATISFIES DUE PROCESS**

For any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). The Rule requires that any such notice "must clearly and concisely state in plain, easily understood language" the following items: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel if the member so desires; (5) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and (6) the binding effect of a class judgment on class members under Rule 23(c)(3). *See* FED. R. CIV. P. 23(c)(2)(B).

The proposed forms of the Class Notice, attached as Exhibits B and C to Attachment 1, described the Settlement Agreement and notice plan set forth in Section V(6) of the Settlement Agreement are consistent with due process and meet the requirements of Rule 23. The Class Notice describes the nature of the case, defines the class and the class claims, and walks individuals through a series of questions that explain in plain language the terms of the Settlement Agreement. It informs individuals that they have the option to participate (and how

to do so) or to affirmatively opt out of the class (and how to do so), and it explains the different consequences of each action. It identifies Class Counsel, explains that potential Class Members have a right to seek counsel of their own to assist with the claims process, and explains that Class Counsel intends to seek no more than 25% of the Total Settlement Amount ($237,500.00) as attorneys' fees in this case. The Class Notice also informs potential Class Members about the Court's Fairness Hearing and explains that potential Class Members have a right to provide comments about or express disagreement with the Settlement—including the requested attorney's fees—at the Fairness Hearing.

The plan for Class Notice in this case satisfies Rule 23(e)(1)'s command to "direct notice in a reasonable manner to all class members who would be bound by the proposal." As detailed in the Settlement Agreement, direct notice consisting of a Claim Form and Notice Packet will be sent via first-class mail to the last known address of each Class Member as maintained in Defendant's Class Data.

### C.     PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Rule 23(g) requires that courts consider the following four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims; (2) class counsel's experience in handling complex litigation and class actions; (3) counsel's knowledge of the applicable law; and (4) the resources that class counsel will commit to representing the class. FED. R. CIV. P. 23(g). In this case, all these requirements are met. Plaintiffs' attorneys have extensive experience and expertise in complex employment litigation and class action proceedings, and are qualified and able to conduct this litigation. The Named Plaintiffs' counsel, Christopher J. Williams and Alvar Ayala, have been lead counsel or co-counsel in over 300 wage and hour cases filed in the Circuit Court of Cook County and the Northern District of Illinois. The majority of these cases set forth class claims under the FLSA, the IMWL, the IWPCA,

16

and/or the IDTLSA and proceeded as class actions and/or collective actions under §216(b) of the

FLSA and/or Federal Rule 23.[2]

This Court should grant preliminary approval of the Settlement Agreement because it is

fair, reasonable, and adequate. The Court should likewise conditionally certify the class for

purposes of settlement and approve the class notice plan.

### D. PRELIMINARY APPROVAL IS APPROPRIATE BECAUSE THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

"Federal courts naturally favor the settlement of class action litigation." *Isby*, 75 F.3d at

1196; *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed.

1992) (gathering cases). The traditional means for handling claims like those at issue here —

---

[2] Plaintiffs' Counsel have regularly been designated as class counsel in class action employment litigation including: *Gutierrez v. Addison Hotels, LLC* Case No. 15 C 5021 (N.D. Ill.) (D.E. 44) (Final Approval 5/9/16); *McDowell et al. v. Accurate Personnel, LLC* Case No. 14 C 8211 (N.D. Ill.) (D.E. 68) (Preliminary Approval 5/4/16); *Hoffman et al. v. RoadLink Workforce Solutions, LLC et al.,* Case No. 12 C 7323 (N.D. Ill.) (D.E. 154) (Final Approval 1/29/16); *Mayfield et al. v. Versant Supply Chain, Inc. et al.,* Case No. 14 C 7024 (N.D. Ill.) (D.E. 61) (Final Approval 12/15/1); *Ramirez v. Staffing Network et al.,* Case No. 13 C 6501 (N.D. Ill.) (D.E. 142)(Final Approval 7/24/15); *Martinez et al. v. Staffing Network et al.,* Case No. 13 C 1381 (N.D. Ill.) (D.E. 143) (Final Approval 6/30/15); *Alvarado et al. v. Aerotek,* Case No. 13 C 6843 (Final Approval 1/29/2015); *Dickerson v. Rogers' Premier Enterprises, LLC* Case No.13 C 7154 (Final Approval 01/07/15); *Hernandez v. ASG Staffing, Inc.,* Case No. 12-2068 (Final Approval 12/11/14); *Blancas et al. v. Cairo and Sons Roofing, Co. Inc.,* Case 12 C 2636 (Final Approval 12/12/2013); *Dean et al. v. Eclipse Advantage Inc., et al* Case 11 C 8285 (Final Approval 12/17/2013); *Gallegos et al v. Midway Building Services, LTD et al.,* Case No. 12 C 4032 (Final Approval 10/02/2013); *Craig v. EmployBridge et al.,* Case No. 11 C 3818 (Final Approval 04/04/13); *Smith et al. v. Dollar Tree Distribution, Inc.,* Case No. 12 C 3240 (Final Approval 2/27/13); *Ramirez et al. v. Paramount Staffing of Chicago, Inc.,* Case No. 11 C 4163 (Final Approval 1/29/13); *Bautista et al v. Real Time Staffing, Inc.,* Case No. 10 C 0644 (Final Approval 09/06/12); *Ochoa et al v. Fresh Farms International Market, Inc. et al.,* Case No.11 C 2229 (Final Approval 07/12/12); *Jones et al v. Simos Insourcing Solutions, Inc.,* Case No. 11 C 3331 (Final Approval 05/04/12); *Francisco et al v. Remedial Environmental Manpower, Inc. et al.,* Case No. 11 C 2162, (Final Approval 04/25/12); *Alvarez et al v. Staffing Partners, Inc. et al.,* Case No. 10 C 6083 (Final Approval 01/17/12); *Craig et al v. Staffing Solutions Southeast, Inc.,* Case No. 11 C 3818 (Final Approval 06/06/11); *Andrade et al v. Ideal Staffing Solutions, Inc. et al.,* Case No. 08 C 4912 (Final Approval 03/29/10); *Arrez et al v. Kelly Services, Inc.,* Case No. 07 C 1289 (Final Approval 10/08/09); *Acosta et al v. Scott Labor LLC et al.,* Case No. 05 C 2518 (Final Approval 03/10/08); *Ortegón et al v. Staffing Network Holdings, LLC et al.,* Case No. 06 C 4053 (Final Approval 03/13/07); *Garcia et al v. Ron's Temporary Help Services, Inc. et al.,* Case No. 06 C 5066 (Final Approval 04/03/07); *Camacho et al v. Metrostaff, Inc. et al.,* Case No. 05 C 2682 (Final Approval 05/17/06).

individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual Class Members, would be impracticable. The proposed Settlement, therefore, is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

a. Preliminary approval of the proposed settlement at an informal hearing;

b. Dissemination of mailed and/or published class notice of the settlement to all affected class members; and

c. A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Compl. Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by class action commentator Prof. Herbert Newberg, safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq.*

With this Unopposed Motion, Plaintiffs request that this Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Id.* at § 11.25 at 11-36, 11-37. The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve or reject a proposed settlement]

within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"); *Class Plaintiff v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion).

The Court's grant of preliminary approval will allow all Class Members to receive Class Notice of the proposed Settlement's terms and of the date and time of the Fairness Hearing, at which Class Members may be heard regarding the Settlement, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented. *See Manual for Compl. Lit.*, at §§ 13.14, 21.632. Neither formal class notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *Id.* § 13.14.

### 1. The Criteria for Preliminary Settlement Approval Are Satisfied.

Under Rule 23(e) of the Federal Rules of Civil Procedure, a court may approve a proposed class action settlement if the court determines that the settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Court approval of a class action settlement is a two-step process. First, counsel submits the proposed settlement to the Court, which makes a preliminary fairness evaluation. Then, the Court schedules a Fairness Hearing, after Class Notice is sent to the Class Members, to determine whether the proposed settlement is fair, reasonable, and adequate to the Class. *Manual for Complex Litigation, Third*, § 21.632 (West 1999). After making this determination, the Court must then direct that notice of the settlement certification, proposed settlement, and the date of the final fairness hearing be provided to Class members.

Courts review a motion for preliminary approval of a class action settlement to determine whether the proposed settlement is within the range of possible approval. *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980). "Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). In evaluating the fairness of settlements, the focus is not on "individual components of the settlements," but rather the settlements "in their entirety." *Id.* at 1191 (quoting *Armstrong*, 616 F.2d at 315). Courts also consider the facts "in the light most favorable to the settlement." *Id.* "At the preliminary approval stage, however, the court's task is merely to 'determine whether the proposed settlement is within the range of possible approval,' not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards under *Synfuel*." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011).

In the Seventh Circuit, courts must consider five factors in evaluating the fairness of a settlement, including: (1) "the strength of plaintiffs' case compared to the amount of defendants' settlement offer"; (2) "an assessment of the likely complexity, length and expense of the litigation"; (3) "an evaluation of the amount of opposition to settlement among affected parties"; (4) "the opinion of competent counsel"; and (5) "the stage of the proceedings and the amount of discovery completed at the time of settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996)).

As explained below, the Settlement Agreement is the product of extensive arm's-length negotiations (both formal and informal) between experienced attorneys. In addition, the Settlement comes at an appropriate time, as the Parties formally and informally exchanged significant data and documents in preparation for and during the mediation with the Honorable Morton Denlow (ret.) and, in advance of the settlement conference, the Parties spelled out their

respective arguments on a myriad of legal and factual issues related to Plaintiffs' claims. The Settlement also falls well within the "range of possible approval." It is, therefore, more than sufficient to warrant public notice and a hearing. Accordingly, preliminary approval should be granted.

**a.**     **Strength Of Plaintiffs' Case Balanced Against Amount Of Settlement Favors Approval.**

"The most important factor relevant to the fairness of a class action settlement . . . is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs.*, 463 F.3d at 653 (quoting *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)). Here, the proposed Settlement strikes an appropriate balance between the strength of Plaintiffs' case and the benefit to the Class of securing a settlement. In the course of both formal and informal discovery, the Parties exchanged thousands of documents and very large excel files with relevant electronically stored information. The Parties used this information to assess their risk and to explore the possibility of settlement. The Parties ultimately reached this Settlement Agreement after this long discovery process and after an all-day mediation session supervised the Honorary Magistrate Judge Denlow (retired).

Additionally, the process facilitated by the Parties' mediation session allowed the Parties to exchange briefing on a range of issues affecting the merits of Plaintiffs' claims and the appropriateness of class certification. Plaintiffs both provided and received information that normally would not be exchanged until later stages of the litigation, and as a result, Plaintiffs were able to evaluate the strengths of their case and compare them with potential obstacles that Plaintiffs would have to confront and overcome if the case proceeded to trial.

Ultimately, Plaintiffs were able to secure a Settlement that provides a significant and certain recovery for the members of the class. *See In re AT & T Mobility Wireless Data Servs.*

21

*Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) ("Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money . . .") (internal citations and quotations omitted). Specifically, the Settlement Agreement in this case calls for Defendant to fund a Total Settlement Amount of up to $950,000.00, plus an additional $100,000.00 Claims Administration Fund to cover the costs of claims administration. The Settlement also calls for strong injunctive relief aimed at further preventing the alleged violations in the future.

Plaintiffs' claims here are largely based on assignments made for which there are scarce records. Specifically, the damages on Plaintiffs' claim that they and the Class were not compensated for four hours on days they were contracted but not utilized would be difficult to quantify in the absence of sign-in sheets and logs reflecting which Class Members reported to work for an alleged assignment before being sent home without being utilized.

Additionally, while Plaintiffs do not concede on any of these defenses, Defendant has vigorously denied liability on all of Plaintiffs' claims in the case, as well as have contended that class certification would not be granted on any of Plaintiffs' claims, in the absence of a settlement. Among other things, Defendant contended that its policy was to pay the four-hour minimum pay as required by the IDTLSA. Defendant also maintained that it had evidence of its compliance with this policy. Lastly Defendant maintained that Class Members who reported for work at Defendant's client companies had not legally been contracted to work and were not due four hour minimum pay.

With respect to Employment Notices, Defendant contended that its policy was to provide Employment Notices as required by the IDTLSA. Defendant also maintained that it had evidence of its compliance with this policy and produced substantial documents showing that it had, in fact, provided Employment Notices in some cases.

In light of these factors and other risks inherent in litigating such cases, the Parties reached a Settlement Agreement aimed at providing Class Members with a significant monetary recovery. The actual amount of recovery for each Claimant will depend on the number of Class Members who file valid claims. Furthermore, this Settlement provides strong non-monetary relief aimed at preventing the alleged violations in the future.

Plaintiffs believe this is a reasonable compromise in this case, particularly in light of Defendant's willingness to take steps to protect against any potential future instances of the violations alleged in the Lawsuit.

The Parties negotiated a Total Settlement Amount, which Plaintiffs' Counsel believes will provide Class Members who make a successful claim on the Total Settlement Amount with substantial monetary relief based on Plaintiffs' theory of liability. Given the potentially viable defenses asserted by Defendant, the recovery that Plaintiffs and Class Members will receive, and the strong injunctive relief that Defendant will adopt to further prevent the alleged violations of the IDTLSA in the future, approval of this Settlement Agreement is warranted.

### b. Likely Complexity, Length, and Expense of Litigation

An early settlement also allows Plaintiffs and the Class Members to recover lost four hour minimum pay while avoiding what certainly would have been a complex, long, and expensive litigation. The legal issues presented in this Lawsuit are complex and, in some cases, novel. Given the uncertainty of whether the claims could be certified for class treatment, Defendant's defenses on the merits, and the difficulties of proof, the terms of the Settlement Agreement compromising the Class are fair and reasonable.

Indeed, although this Settlement has occurred relatively early in the life of the litigation, further litigation of these claims would result in lengthy proceedings involving expensive oral

discovery, class certification proceedings, and summary judgment briefing, all of which would have undoubtedly added years to the litigation, before Plaintiffs ever could reach a trial.

### c.     Opposition to the Settlement

Because notice has not been sent, it is impossible to know if there will be any objectors to the Settlement.  *In re AT&T*, 270 F.R.D. at 349.  However, the Parties are not aware of any objectors to the Settlement at this time.  Moreover, because Plaintiffs' counsel, aided by the Named Plaintiffs, have maintained open communication with other temporary laborers employed by Defendant as part of the investigation and litigation of this case, Plaintiffs believe that there will be few, if any, objectors to the Settlement Agreement.

### d.     Opinion of Competent Counsel

Counsel for Plaintiffs and Defendant are experienced litigators, and both have significant experience within the temporary staffing industry specifically.  A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.  *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation omitted); *see also Berenson v. Faneuil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair.").  In evaluating the fairness of a settlement, courts may "rely heavily on the opinion of competent counsel."  *Gautreaux*, 690 F.2d at 634.  The Settlement Agreement here is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation in general and with the legal and factual issues of IDTLSA violations in particular.  In negotiating this Settlement Agreement, Plaintiffs' counsel had the benefit of years of experience advocating the interests of low wage laborers combined with an in-depth familiarity with the facts of this case.  In addition, Plaintiffs' Counsel have successfully litigated and resolved over

30 class actions involving low wage laborers in the temporary staffing industry. Similarly, Counsel for Defendant are experienced class action litigators and have worked with clients in the temporary staffing industry (including, but not limited to, with Defendant) for decades.

Plaintiffs' Counsel supports the resulting settlement as fair and as providing reasonable relief to the members of the Class.

### e. Stage of the Proceedings and Discovery at Time of Settlement

That the Settlement Agreement occurs at this relatively early stage of formal litigation is a great benefit to the class members, as Plaintiffs have secured a recovery for Class Members without the financial and legal risks associated with extended discovery and motion practice. Additionally, the Parties exchanged thousands of documents and voluminous databases in the process of both formal and informal discovery which provided the Parties with a proper valuation of the case during Settlement discussions.

In sum, the Settlement Agreement represents a significant recovery for Plaintiffs, which has been achieved without the risks and financial burden of protracted litigation. The Settlement Agreement yields a fair and reasonable result, and Plaintiffs respectfully urge this Court to preliminarily approve it.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs make the unopposed request that the Court: (i) grant this Motion for Preliminary Approval of the Stipulation of Settlement; (ii) appoint Plaintiffs' counsel as Class Counsel in this Lawsuit; (iii) approve class certification of the class identified herein for the purposes of settlement only; (iv) approve the Class Notice and authorize notice to the Class; (v) preliminarily approve the Joint Stipulation and Settlement Agreement of Class Action Claims; (vi) set a date for the Fairness Hearing; (vii) enter the Proposed Order of

Preliminary Approval, which is attached as Exhibit F to Attachment 1; and (viii) grant all further

relief deemed just and proper.

Respectfully submitted,

Dated: July 21, 2016

_s/Christopher J. Williams_
Christopher J. Williams
Alvar Ayala
Workers' Law Office, PC
53 W. Jackson Blvd., Suite 701
Chicago, Illinois 60604

Attorneys for Plaintiffs